## HUGHES v. FIRST STATE BANK OF WAGONER.

No.13470—Opinion Filed Feb. 10, 1925.

### Contracts—Construction—Third Party as Beneficiary—Presumption.

Inasmuch as parties to a contract usually stipulate for themselves, a strong presumption obtains in any given case that such was the intention. Where a contract sets forth provisions which by specific declaration are for the benefit of a third party, and sets forth other provisions which by specific declaration are for the benefit of the second parties to the contract, held, that such third party is not a beneficiary of such latter provisions, and that it is the duty of the court to so construe such contract as a matter of law.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Wagoner County; E. A. Summers, Judge.

Action by First State Bank of Wagoner, Okla., against Leo Hughes, trustee, and Leo Hughes. From the judgment, the latter appeal. Reversed and remanded, with directions.

Watts & Watts and E. J. Broaddus, for plaintiffs in error.

E. L. Kirby and P. T. McVay, for defendant in error.

Opinion by LYONS, C. The plaintiff, First State Bank of Wagoner, brought a replevin action in the district court against the defendants for the purpose of securing possession of certain personal property, to wit, certificate No. 3160 covering 5,000 shares of M. T. C. Oil & Gas Company's stock, and certificate No. 4893, covering 1,000 shares of M. T. C. Oil & Gas Company's stock. The plaintiff alleged specific ownership of said property, and contended that it was the owner thereof as beneficiary under a certain contract executed between E. F. Case, party of the first part, and Leo Hughes and J. D. Green, parties of the second part.

An examination of this contract is necessary for the determination of this action. The contract is as follows:

"This contract made and entered into this 1st day of December. 1920, by and between E. F. Case, party of the first part and Leo Hughes and J. D. Green, parties of the second part, Witnesseth:

"First party hereby sells to second parties his control in the First State Bank of Wagoner, Okla., being 126 shares, for and in consideration of what is held against said stock by the Security State Bank, Shawnee, Oklahoma, being a total of $16,500, and whatever interest if any may have accrued. First party to receive his notes due said Security State Bank, Shawnee, Okla., when second parties have received 126 shares of said stock.

"First party agrees to deliver to second parties outright one certain promissory note for $5,375, signed in his favor to C. H. Kingham, to indorse same and also to deliver outright one certain certificate of stock in the M. T. C. Oil Co., representing 5,000 shares par value in said M. T. C. Oil Co., as their books show, said stock now being held by Security State Bank of Muskogee, as collateral to a certain note signed by C. H. Kingham, balance of which is $3,500, and which note further secured by additional collateral from the said C. H. Kingham. The above described note and certificate of stock are turned over to said second parties as a guaranty of all paper in the said First State Bank of Wagoner, Okla., and are to be held as the property outright of the said second parties hereto.

"First party hereby guarantees the accuracy and genuineness of the accounts of the First State Bank, Wagoner, Okla., including all accounts of the individual ledger, the general ledger, the draft register, correspondent accounts, cashiers checks, certificates of deposit, and all accounts of whatever nature in the said First State Bank.

"First party agrees to remain in the bank at his present salary of $250 per mo., through this December. 1920, and to render such service as second parties may desire, that he is hereby guaranteeing to second parties his good will and cooperation in holding all the business now enjoyed by said First State Bank. First party guarantees the said First State Bank against any suits in any court which may now be pending, suits of any nature whatsoever. First party hereby guarantees to release second parties from any responsibility which might attach to any notes which first party may have indorsed.

"Any responsibility which said First State Bank may have assumed on a certain "C. H. Kingham Cotton Account" for $10,000, now held by the Security State Bank, Shawnee, Okla., is hereby accepted by said second parties, said first party being released from any responsibility he may have assumed on said account in the legal power of said second parties to release, on said 'Kingham Account.'

"Witness our hands this 1st day of December. 1920.

"E. F. Case          First party.
"Leo Hughes          Second party,
"J. D. Green         Second party,
"Witness:
"Nell Ellington,
"E. G. Stevison."

It is further necessary to state that Hughes and Green by the purchase of this stock bought the controlling interest in the plaintiff bank. The plaintiff bank relies upon the following paragraph of said contract:

"First party agrees to deliver to second parties outright, one certain promissory note for $5,375, signed in his favor by C. H. Kingham, to indorse same and also to deliver outright one certain certificate of stock in the M. T. C. Oil Co., representing 5,000 shares par value in said M. T. C. Oil Co., as their books show, said stock now being held by Security State Bank of Muskogee, as collateral to a certain note signed by C. H. Kingham, balance of which is $3,500, and which note further secured by additional collateral from the said C. H. Kingham. The above described note and certificate of stock are turned over to said second parties as a guaranty of all paper in the said First State Bank of Wagoner, Okla., and are to be held as the property outright of the said second parties hereto." ·

Plaintiff contended in the court below, and the court submitted its contention to the jury, that the foregoing terms were made for its benefit, and that the M. T. C. stock was turned to Hughes and Green as a guaranty of all paper in the First State Bank of Wagoner for the benefit of the bank, and for the benefit of all of the stockholders thereof. Plaintiff cites the case of Love v. Kirkbride Drilling & Oil Co., 37 Okla. 804, 129 Pac. 858, to sustain its position. The second paragraph of the syllabus in that case is as follows:

"K. the president and general manager of the Kirkbride Drilling & Oil Company, entered into a verbal agreement with L., a stockholder in said company, who was also the manager and assistant treasurer of the Sachem Oil Company, whereby the beneficial interest of said first named company and of K., theretofore claiming to be the owner of said interest in his own right, was transferred to the Sachem Oil Company, in consideration of a sum certain, to be paid by the said last named company into the treasury of the first named company, and which amount was so paid, but subsequently appropriated by L. and J., owners of one-half of the stock of the Kirkbride Drilling & Oil Company, claiming ownership thereof. Held, that the agreement so made and entered into constituted a valid contract, supported by a good consideration, and that an action would lie to recover the purchase price by the first named company."

It will be seen that the agreement upon which the decision in the Kirkbride Case, supra, was reached was clear and unambiguous, and was plainly for the benefit of the company since one of its terms was that a sum certain was to be paid into the treasury of the company. The clause in the instant case contains no language of this character and contains language which plainly negatives any such intent or plan. The second parties here purchased the bank stock of the first party. The value of this bank stock wouuld be materially affected by the existence of worthless paper in the bank. The note and certificate of stock referred to are, by the specific terms of the contract, turned over to the second parties as a guaranty of all paper in the First State Bank of Wagoner, and are to be held as the property outright of the second parties hereto. We note a further provision in the contract by which the first party directly guarantees the First State Bank against any suits in any court which may now be pending, and in the same paragraph guarantees to release the second parties to the contract from any responsibility which might attach to any notes which the first party may have indorsed. We note further that Hughes and Green accept any responsibility which the First State Bank may have assumed on a certain C. H. Kingham cotton account for $10,000 held by the Security State Bank of Shawnee. It is evident, therefore, that there are two provisions clearly made for the benefit of the First State Bank. 1. A guarantee against pending suits. 2. An acceptance of any responsibility which the bank may have assumed on the C. H. Kingham cotton account for $10,000 held by the Security State Bank.

It seems, therefore, that where the parties desired to incorporate provisions for the benefit of the First State Bank they used clear and unambiguous language which evidences their intent. The clause as to ownership of the M. T. C. Oil Company's stock, while it provides that said property is turned over as a guarantee of all paper in the First State Bank, further specifically provides that said certificate of stock is to be held as the property outright of the second parties. We think that the clear intent herein evidenced is to save the second parties as majority stockholders from loss occasioned by depreciation of the stock value on account of worthless paper in the First State Bank, and to retain any equity first party might claim in the stock.

The rule cited by both appellant and appellee is announced in the case of Kokomo Oil Company v. Bell, 81 Okla. 247, 198 Pac. 326; Prowant v. Sealy, 77 Okla. 244, 187 Pac. 235; Levin v. Cook, 84 Okla. 55, 202 Pac. 299.

The rule is that "the intention of the par-

ties must be determined from the entire agreement and not from any part or parts of it standing alone, and if possible, every part should be made effectual."

We are forced to consider the fact that the parties specifically provided that this stock should be the **outright** property of Hughes and Green. The word "outright" is defined by the New Standard Dictionary to mean "free from reserve or restraint; direct; positive; downright. Without reservation or limitation; to the whole extent; altogether; entirely; utterly; openly."

We think, therefore, that when we examine the contract as a whole, in view of the fact that we find direct provisions for the benefit of the bank, we are bound to conclude that in view of the language of the clause relied on that the same was not for the benefit of the bank, and that the contracting parties meant what they said in declaring that the M. T. C. Oil stock should be the property of Hughes and Green **outright.** We think this clearly meant that Hughes and Green owned the property free from limitations or reservation, individually, and that the bank acquired no interest or claim under the contract. It must also be borne in mind that the bank is not a party to the contract. It sues as plaintiff here as on a contract made for the benefit of a third person. If the matter were doubtful, a doubt must be resolved against it. 6 ᵒRuling Case Law, on Contracts, section 274, page 887, lays down the rule as follows:

"But it has been observed that inasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention; that the implication to overcome that presumption must be so strong as to amount practically to an express declaration."

The court permitted the introduction of oral testimony relative to the stock ownership. This testimony was in sharp conflict. In our view there was no basis for the introduction of oral evidence. The construction of the contract is a question of law for the court, and when interpreted under the ordinary canons of construction it is clear that it does not support an action by the bank as beneficiary of the terms thereof.

The judgment of the trial court therefore was erroneous. The cause should be reversed and remanded, with directions to grant a new trial.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. pp. 709, 759 (1920 Anno) p. 783.