[L. A. No. 15919.   In Bank.—September 27, 1939.]

HARRY B. SCHILDWACHTER, Appellant, v. THE CITY OF COMPTON et al., Respondents.

A. N. Soliss for Appellant.

Ralph K. Pierson, City Attorney, for Respondents.

SHENK, J.—This is an action by a taxpayer and elector of defendant, City of Compton, to set aside a resolution of the city council declaring the repeal of its civil service ordinance following a popular vote.

On June 11, 1935, the city council adopted ordinance No. 368, establishing a civil service system.   Thereafter a change

in personnel of the council resulted in attempts to repeal and to amend the civil service ordinance, each of which was met by a referendum petition, following which the council repealed the repealing and amending ordinances.

On December 3, 1935, the council decided to submit the question of repeal of the civil service ordinance to a popular vote. A special election was called for January 17, 1936, and an affirmative vote of 1404 to 1310 was registered. Accordingly the council declared the original civil service ordinance repealed.

Plaintiff brought this action to have said determination declared a nullity, making two contentions: First, that a two-thirds vote was required for the repeal and the simple majority vote was consequently inadequate; second, that the matter was improperly submitted as a "proposition" instead of an ordinance. The lower court sustained a demurrer to the complaint without leave to amend, and dismissed the action. In our opinion, the court rightly concluded that plaintiff failed to successfully challenge the result of the election.

■ In support of the first contention that a two-thirds vote was required for the repeal, plaintiff advances the following argument: Defendant city operates under a freeholders' charter which merely authorizes provision "for a Civil Service System subject to the terms of this charter" but is silent on the procedure for establishing it. The same charter declares that "where the general laws of the state provide a procedure for the carrying out and enforcement of any rights or powers belonging to the city, said procedure shall control and be followed unless a different procedure shall have been provided in this charter or by ordinance". Section 16 of the civil service ordinance provides that the "general laws of the State of California as they now or may hereafter exist, with reference to a Civil Service System in Municipalities, in so far as the same do not conflict with the provisions of this ordinance, or the Charter of the City of Compton, are hereby incorporated herein and made a part hereof". The Municipal Civil Service Act of 1935 (Deering's Gen. Laws, Act 1401) provides that the legislative body of any municipality which has established a civil service system "shall not have the authority to withdraw any departments, appointive officers or employees from

the operation of such system unless and until the withdrawal thereof shall have been submitted to the qualified electors of said city at a special or regular municipal election held in said city and shall have been approved by not less than a two-thirds vote of the electors voting on such proposition''. The argument is in substance that the civil service ordinance incorporated by reference the above provisions of the Municipal Civil Service Act, and that since the charter is silent on the procedure of repeal of a civil service ordinance, there is no conflict nor interference with the paramount power of the municipality in its municipal affairs.

Defendant city vigorously attacks this reasoning, contending that under the charter the power to establish a civil service system resides in the city and that the Municipal Civil Service Act was not incorporated by the general language in the charter. It is further urged that the statute did not become effective until after the ordinance was adopted, and that the city could not validly incorporate such future legislation. Still further, it is contended that the attempt to enforce the said statutory provision for a two-thirds vote would be to directly violate the charter, because the charter *expressly* incorporates the provisions of the City Initiative and Referendum Law of 1911 (Deering's Gen. Laws, Act 3651), which, in connection with elections such as these, require only a majority vote. It is unnecessary, however, to further examine these contentions, for defendant has advanced a more conclusive answer to the theory of plaintiff. The very statutory provision relied upon by plaintiff has nothing to do with an election called for the purpose of *repealing* a civil service ordinance. The provision (sec. 2 of Act 1401) states that the legislative body shall designate the departments, officers or employees which shall be placed under the civil service system; that it may from time to time, by ordinance, add additional departments, officers or employees to the list; and it then goes on to declare, as above quoted, that no departments, officers or employees may be withdrawn from the operation of the system without a two-thirds vote of the electors. The language of the section is free from ambiguity, and the intention seems quite clear. It was designed to discourage and make more difficult the exemption of departments or positions by members of the

governing body of the municipality. This seems to be a salutary rule, but we are unable to perceive the manner in which it may be invoked to deprive the electors of their normal power to adopt legislation by a majority vote. The suggestion that repeal is simply another form of withdrawing positions from the operation of the system is without force. It is entirely reasonable that the council should have power by ordinance to establish or repeal a civil service system, and that the people should likewise have such power by majority vote, and it is not unreasonable that the council, by the requirement of a two-thirds vote to approve them, should be prevented from creating favored exemptions.

■ The other contention of plaintiff is that assuming the election was governed by the provisions of the City Initiative and Referendum Law, the method of submission of the question to the voters was improper. He relies on general statements to the effect that an ordinance may be repealed only by an enactment of equal dignity, i. e., by another ordinance. (See McQuillan, Municipal Corporations, 2d ed., sec. 885; 18 Cal. Jur. 928, note 7.) Here, instead of a repealing ordinance, there was submitted to the voters a ''proposition'' for repeal. But this is the very thing contemplated by the above-mentioned statute, which provides in part (sec. 1.) : ''The legislative body of the city or town may submit to the people, without a petition therefor, a *proposition* for the repeal of any adopted *ordinance,* or for amendments thereto, or for the enactment of any new ordinance, to be voted upon at any succeeding regular or special municipal city or town election, and if such proposition so submitted receive a *majority* of the votes cast thereon at such election, *such ordinance shall be repealed,* amended or enacted accordingly.'' This language clearly contemplates the submission of a ''proposition'' and does not necessarily require such proposition to be an ''ordinance''. In the next paragraph of the statute it is provided that ''Whenever any *ordinance* or *proposition* is required by this statute to be submitted to the voters of a city or town at any election, the clerk of the legislative body shall cause the *ordinance* or *proposition* to be printed and he shall mail a copy thereof . . . to each voter . . . '' Notice and full information are thus afforded the voters, and we are satisfied that the city

council in the present case followed the proper procedure in the submission of the proposition for repeal.

The judgment is affirmed.

Curtis, J., Edmonds, J., Waste, C. J., and York, J., *pro tem.*, concurred.