[Civ. No. 6395.    Fourth Dist.    Feb. 7, 1961.]

NEWPORT BEACH FIRE AND POLICE PROTECTIVE LEAGUE et al., Appellants, v. CITY COUNCIL OF THE CITY OF NEWPORT BEACH et al., Respondents.

18

Jacobs, Jacobs, Nelson & Witmer and Paul B. Witmer, Jr., for Appellants.

Walter W. Charamza, City Attorney, for Respondents.

COUGHLIN, J.—The question for determination on this appeal is whether an initiative ordinance of the city of Newport Beach relating to its civil service system is valid.

The petitioners, appellants herein, filed a petition for a writ of mandate asking that the City Council of Newport Beach and others, respondents herein, be directed to declare invalid the adoption of that ordinance; a general demurrer thereto was sustained with leave to amend; petitioners elected not to amend; a judgment of dismissal followed; and from this judgment the petitioners have taken this appeal.

The city of Newport Beach became a chartered city on January 7, 1955. Under the provisions of its charter the civil service system previously in effect was retained. Pertinent provisions thereof are:

(1) "Section 800. Continuance of Present System. The civil service system existing at the time this Charter takes effect, to the extent that the same is not inconsistent with any of the provisions of this Charter, is hereby continued in existence subject to all of the terms and provisions of this Charter and subject to amendment by proper authority as in this Charter provided";

(2) "Section 801. System to be Maintained. The City Council shall by ordinance continuously maintain a civil service system for the selection, employment, classification, advancement, suspension and discharge of those appointive officers and employees who shall be included in the system. The system shall comply with all other provisions of this Charter"; and

(3) "Section 803. Withdrawal from System. After inclusion in the system, any departments or appointive officers or employees shall not be withdrawn therefrom, either by an outright repeal of the civil service ordinance or otherwise,

unless such withdrawal has been submitted to the city electors at a special or regular municipal election and approved by a majority of two-thirds of those electors voting on the proposition.'' (Stats. 1955, pp. 3634-3635.)

The petition indicates that ordinance number 511 of the city of Newport Beach was the civil service ordinance in effect at the time the charter was adopted; alleges that on November 4, 1958, an initiative proposition was submitted to the electors of the city which proposed the repeal of ordinance number 511 and the adoption of ordinance number 866; that this initiative measure was adopted by a majority vote of the electors but not by a two-thirds vote thereof; indicates that ordinance number 866 is a civil service ordinance; alleges that this ordinance withdraws certain rights and benefits from the officers and employees of the police and fire departments particularly in that it changes the method of advancement therein by eliminating a requirement that the chiefs of these departments must be selected from their ranks; and also alleges that, pursuant to said initiative proceedings, the city council purported to adopt ordinance number 866 and repeal ordinance number 511. Copies of these ordinances are not set forth in or attached to the petition.

The appellants contend that the repeal of ordinance number 511 amounted to a withdrawal of all of the civil service employees from the civil service system and, therefore, under the charter the initiative measure could be adopted only by a two-thirds vote of the electorate. There is no allegation in the petition that any civil service employee actually was withdrawn from the system. It does not appear that any city employee has lost his job as the result of the adoption of the initiative measure.

Respondents contend:

(1) that the initiative measure did not involve a withdrawal of any civil service employee from the system and, therefore, the charter provisions requiring a two-thirds vote did not apply; and (2) that the section of the charter in question contravenes the provisions of the state Constitution which reserves to the electorate through the initiative and referendum the right to legislate by majority action and, therefore, is invalid.

It appears that the initiative measure in question substitutes one civil service ordinance for another civil service ordinance but does not withdraw any officer or employee from

the civil service system. The obvious purpose of section 803 of the charter is to prevent an officer or an employee who is a member of the civil service system from being taken out of that system either by repeal of the ordinance or otherwise without submitting the matter to the electorate. (*Schildwachter* v. *City of Compton*, 14 Cal.2d 342, 344-345 [94 P.2d 346].) To conclude that an initiative measure such as is under consideration in this case achieves the purpose which the charter provision in question seeks to prevent is unreasonable. As heretofore noted, the argument in support of such a conclusion is founded upon the premise that the initiative measure in question not only substituted a new civil service ordinance for the old civil service ordinance but also repealed the old ordinance, and by such repeal caused the withdrawal of all employees and officers from the civil service system. The premise is faulty. Section 800 through section 803 of the charter give primary consideration to a civil service *system* and not to a civil service *ordinance.* It is argued, in substance, that the system and the ordinance are one and the same; that the reference in section 800 of the charter to the civil service system is a reference to ordinance number 511 as it then existed; and that any change in the ordinance is a change in the system. However, the section just referred to provides that the system is subject to amendment, and if the term "system" as therein used means "ordinance" charter recognition is given to the fact that the ordinance may be amended. That a civil service system and a civil service ordinance are interrelated may not be questioned. On the other hand the language of the charter would indicate that these terms are not to be considered as one and the same for its purposes. The charter expressly refers to an "ordinance" as well as to a "system." Section 801 provides that the "City Council shall *by ordinance* continuously maintain a civil service *system. . . .*" (Emphasis added.) Section 802 recognizes that the *system* shall include members of the police and fire departments and authorizes the inclusion of "other appointive officers or positions" by *ordinance.* We conclude that the civil service system of the city of Newport Beach may be changed by an amendment of its civil service ordinance. In addition, we are of the opinion that the fact that this change takes place by the substitution of a new ordinance for an old ordinance, with a consequent and incidental repeal of the old ordinance, does not

effect a withdrawal of the officers or employees of the city from the system.

Furthermore, when particular attention is directed to the phraseology used in section 803, its inapplicability to the instant situation is evident. Paraphrased for the purpose at hand, that section provides that "After inclusion in the *system* . . . officers or employees shall not be *withdrawn* therefrom . . . by an *outright* repeal of the civil service *ordinance*" unless "such withdrawal" is submitted to the electorate. (Emphasis added.) Of note is the fact that a distinction is made between "the system" and "the civil service ordinance"; the limitation on authority is directed to the "withdrawal" of officers or employees from the "system"; it is only "such withdrawal" that must be submitted to the electorate; and the reference to a repeal of the civil service ordinance concerns only its effect as a method of *withdrawing* officers and employees from the *system*. That every repeal of the ordinance may not have the effect of withdrawing employees from the system is indicated by the language which refers to "an *outright* repeal." (Emphasis added.) "Outright" has been defined as meaning: "Free from reserve or restraint; . . . altogether; entirely; . . ." (*Hughes* v. *First State Bank of Wagoner,* 106 Okla. 146 [235 P. 1097, 1099]) and "To or in entirety; . . . completely; . . . unreservedly." (Webster's New International Dictionary, 2d ed. unabridged.) In this sense, the phrase "outright repeal" when considered with the other provisions of this section assumes particular significance and dictates the conclusion that there may be a repeal of the civil service ordinance which does not cause officers and employees of the city to be withdrawn from the civil service system. The repeal in the instant case falls within this classification.

Not only are the provisions of section 803 inapplicable to the situation at hand but, also, insofar as these provisions purport to limit the initiative power vested in the people by the state Constitution they are unconstitutional and, therefore, ineffective.

The state Constitution authorizes the adoption of a city charter. (Cal. Const., art. XI, § 8.) Every such charter must be "consistent with and subject to this Constitution" (Cal. Const., art. XI, § 8; *Brown* v. *Boyd,* 33 Cal.App.2d 416, 420 [91 P.2d 926]) and may not limit the power known as the initiative which is reserved to the people (Cal. Const., art. IV, § 1; *Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744, 756

[8 Cal.Rptr. 427, 356 P.2d 171]; *Hopping* v. *Council of City of Richmond,* 170 Cal. 605, 610 [150 P. 977]; *Brown* v. *Boyd, supra,* 33 Cal.App.2d 416, 420), although it may increase that power. (*Crestview Cemetery Assn.* v. *Dieden, supra,* 54 Cal.2d 744; *Hunt* v. *Mayor & Council of City of Riverside,* 31 Cal.2d 619, 622 [191 P.2d 426].) This constitutionally reserved power embraces municipal as well as state affairs. (Cal. Const., art. IV, § 1.) No contention is made herein that city civil service legislation is not a proper subject of initiative action under the power reserved to the people by the Constitution.

Although the charter in question expressly reserves to the people of the city of Newport Beach the power of the initiative over the subject under consideration it has not increased the power reserved to them by the state Constitution. Consequently, no question is involved with respect to charter control over additional powers reserved to the people by it. The provisions of section 803, insofar as they apply to an initiative measure respecting the subject matter thereof, require a two-thirds vote of the people to effectively exercise the legislative power reserved to them. The vital question for determination, therefore, is whether the exercise of that power may be regulated by a city charter prescribing such a requirement.

As applied to state affairs, the Constitution indicates clearly that an initiative measure is adopted by a majority vote. Section 1 of article IV thereof provides: "Any act, law or amendment to the Constitution submitted to the people by . . . initiative . . . petition and *approved by a majority of the votes cast thereon,* at any election, shall take effect five days after date of the official declaration of the vote by the Secretary of State." (Emphasis added.)

In *Galvin* v. *Board of Supervisors,* 195 Cal. 686, 690 [235 P. 450], the court considered the effect of the 1911 amendment to the state Constitution which expressly reserved the initiative power to the electors of each city and stated that it was not intended thereby "to provide for or permit a different method for the exercise of such powers than that specifically provided for in respect to the enactment by that means of state legislation." (*Cf. Dye* v. *Council of the City of Compton,* 80 Cal. App.2d 486, 489 [182 P.2d 623].) The Galvin case did not involve a charter. However, to the extent that a charter concurrently reserves to the people of a city the power of the initiative which is reserved to them by the Constitution, no

legally consequential difference exists between the two situations with respect to the issue at hand. Under these circumstances and the foregoing declaration of principle, the method of exercising the power of the initiative reserved to the people of a city would be the same as that governing the exercise of the power of the initiative reserved to the people of the state at large. As heretofore noted, by constitutional provision the people of the state at large may adopt an initiative measure by a majority vote. A charter provision requiring a two-thirds vote is a limitation upon the constitutionally reserved power. To permit a city charter to regulate the extent to which voter approval is essential to the adoption of an initiative measure would be to permit control tantamount to authority to withdraw from the people a power reserved to them by the Constitution. It is our opinion that the adoption of an initiative measure by a majority of the voters is an integral part of the constitutionally reserved power to act through the initiative; that any regulation requiring a greater number of votes to adopt an initiative ordinance is a limitation upon that power; and that a charter provision requiring a two-thirds vote is ineffective.

The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.